[Civ. No. 9084. Third Dist. July 30, 1957.]

H. S. LORD et al., Appellants, v. THE REGENTS OF THE UNIVERSITY OF CALIFORNIA (a Corporation), Respondent.

White, Harber & Schei for Appellants.

Thomas J. Cunningham, A. H. Conard and John E. Landon for Respondent.

WARNE, J. pro tem.*—Lord and Bishop were the successful bidders on a contract to construct a bridge over Putah Creek on the University of California campus at Davis. By the terms of the contract, the contractor was to receive $41,000 for the construction of the bridge. The contract required the contractor to place a number of concrete piles in the ground as a support for the bridge structure. The specifications provided that the contractor use metal cased or cast-in-place concrete piles. It further provided that if metal cased driven

---

*Assigned by Chairman of Judicial Council.

piles were used that they be either tapered metal casing for driven concrete piles with a sealed tip of not less than 8 inches and an average diameter of not less than 11 inches, or straight sided steel casing with an outside diameter of 12½ inches. The specifications required that driven piles be driven to a 40 ton safe bearing load, in accordance with the 1949 Uniform Building Code formula. The specifications also provided that payment for driven piles would be made for piles 30 feet in length on the basis of the unit prices per foot quoted for variations from that length. In connection with this latter provision the contract provided:

"For the purpose of providing in advance a basis of adjustment in the event of certain possible additions or deductions in connection with the work to be done by the Contractor, the parties hereto hereby agree upon the following unit prices as called for in the specifications for said work:

| Unit Prices | Deduct | Add |
|---|---|---|
| Driven piles: | | |
| Base length in excess of 30 ft. ...... | | $12.50 per ft. |
| Base length less than 30 ft. ......... | $5.00 | " |

Lord and Bishop subcontracted the piling to the Raymond Concrete Pile Company. On the basis of soil studies, the engineer-architect, Isadore Thompson, estimated that the piling for the bridge would only have to go down about 30 feet.

Raymond began work. The first pile driven was what is known as a step taper pile. This is a pile composed of a number of sections of hollow metal casing (each 8 feet long in this case), each section being slightly (⅛ inch) wider at the top than at the bottom, and each section being one inch wider at the bottom than the bottom of the next lower section. The first pile was driven to a depth of 38 feet 11 inches. At that depth it did not meet the required resistence. The job foreman stopped driving the pile and reported to his superior. An official of the Raymond Concrete Pile Company then discussed the matter with Mr. Thompson who was informed that the driving rig on the job was unsuitable for driving step taper piles beyond a depth of 40 feet. Mr. Thompson was told that the rig could drive pipe step taper piles to any depth. Thompson then agreed that pipe step taper piles could be substituted for the step taper pile. This latter act was taken without notifying or consulting Lord and Bishop. A pipe step taper is composed of a length of straight sided step pipe on top of which are several sections of step taper casing. The

lowest section of casing is ⅜ inch wider than the pipe and each additional section is one inch wider than the one below. All of the piles driven were driven to a depth of over 30 feet, the excess of footage being 823 feet and some odd inches. The bridge was completed and accepted. Lord and Bishop were paid the contract price, but they were not paid for the excess footage. After negotiations proved futile, suit was brought for the amount claimed to be due under the contract provision previously cited. The respondent contended that the piles driven did not conform to the specifications and argued that the extra length piling was for extra work not called for by the original contract and was to be paid for on a cost plus basis in accordance with the following provision of the contract:

"The Contractor agrees to do additional work, not covered by unit prices or alternate bids, arising from changes in the plans and/or specifications on the following basis:

"For work performed by the Contractor, the actual cost of the work which includes the direct cost of labor, materials, supplies and transportation plus 15% of such direct costs for overhead and profit, to which shall be added payroll taxes, sales tax, insurance and bond costs.

"For work performed by a subcontractor of the Contractor, the basis shall be as established above for the Contractor to which the Contractor may add 5%, except that to the extent that bond and insurance charges are met by the Contractor rather than the subcontractor, they shall be computed as an addition to the 5% allowed the Contractor."

The trial court found that Lord and Bishop were not entitled to recover, for the extra length piles driven, under the unit price provision of the contract because the piling as driven did not conform to the specifications as to piling and the unit price provision was therefore inapplicable; that there was no waiver of the specification by the respondents. Lord and Bishop were awarded $4,335.74 ($3,569.26 plus 15% plus 5% plus .6%) with interest for the additional cost incurred by it in the driving of the piles. By stipulation the respondent has paid this amount.

Lord and Bishop have appealed. The contention of the appellants is that the unit price provision was inserted in the contract for the very purpose of covering the probability that the piles would be longer or shorter than 30 feet and once it proved the excess footage driven, it was entitled to payment at the price provided in the unit price provision. The appel-

lants also contend that the unit price provision applies even if the piles did not comply with the specifications.

The contract provided for metal cased driven piles, and they could be either: a. Tapered metal casing for driven concrete piles having a sealed tip of not less than 8 inches and an average diameter of not less than 11 inches, or, b. "Straight sided steel casing shall have an outside diameter of 12½ inches." All but one of the piles that were driven on the job were made up of two components: The first or lower part being a straight sided piece of pipe of varying lengths with an outside diameter of 10¾ inches and the second or higher section being a step-tapered pile 11⅛ inches in diameter at its lower end and 11¼ inches at its top or upper end. After the first section was driven into the ground, the second section was attached to the top and the first section was driven deeper, followed by successive tapered sections being attached and driven down until the pile reached the required resistance. There is evidence in the record to show that in the construction industry "tapered-pile" means a continuous tapered pile, i.e., one which regularly narrows. While the evidence is conflicting as to whether the pipe step-tapered piles which were driven on the job met the specifications the trial court found that they did not. Since there is substantial evidence to sustain the finding this court is bound by such finding.

The second question is whether the unit price provision applies for the driving of the piles since they did not meet the specifications. The unit price provision reads in part: "For the purpose of providing in advance a basis of adjustment in the event of certain possible additions or deductions in connection with the work to be done by the Contractor, the parties hereto hereby agree upon the following unit prices as called for in the specifications for said work." The provision was inserted to take care of probable excess pile driving. While evidence was introduced to show that a continuous tapered pile would support more of a load per unit of length than would a pipe step-taper pile it does not follow that the contractor should not be paid for the excess pile driving under the unit price provision called for in the specifications. So far as the record shows, it was neither discussed nor agreed at the time of the permitted change in the kind of piles to be driven, or during the course of the work, that the contractor was to be paid a less or any different amount than set forth in the unit price schedule. Nor was

any change made in the contract. The contract was completed and the work was accepted. Under the circumstances, we are of the opinion that the contractor should be paid as provided for by the unit price provision of the specifications. Especially is this so where, as here, there was a substantial performance in good faith. (12 Cal.Jur.2d, p. 443, § 221.) There is no claim of fraud by the contractor. Nor does the mere fact that a different form of piling was used and driven than called for in the specifications bring the work within the extra work provisions of the contract. It appears that there was merely a slight change in the form of the pile used rather than in the work of installation. We conclude that appellants are entitled to be paid pursuant to the terms of the unit price called for in the specifications.

The judgment is reversed and the trial court is directed to enter judgment for appellants as prayed for in their complaint.

Van Dyke, P. J., and Schottky, J., concurred.